IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MICHAEL WAYNE TIDWELL   )
            )
v.           )  No. 3:22-cv-0185
            )
KILOLO KIJAKAZI      )
  Commissioner of Social Security  )

To:  The Honorable William L. Campbell, Jr., United States District Judge


## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") terminating Supplemental Security Income ("SSI") previously awarded to him under Title XVI of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 18), to which Defendant has responded (Docket No. 22.) Plaintiff has also filed a reply to Defendant's response. (Docket No. 24.) This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 6.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 18) be **DENIED**.

# I.    INTRODUCTION

This case involves cessation of SSI benefits, which the Commissioner initially awarded to Plaintiff on June 27, 2008. (*See* Transcript of the Administrative Record (Docket No. 15) at 80.)[1] On April 6, 2015, after revisiting Plaintiff's disability status, the Commissioner determined that Plaintiff no longer met the relevant disability requirements as of April 1, 2015, and thus discontinued his benefits. (AR 80, 86–87.) Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff challenged this determination by appearing and testifying at a hearing before ALJ Renee S. Andrews-Turner on April 25, 2017. (AR 80.) On August 11, 2017, the ALJ issued an "unfavorable" decision affirming that Plaintiff's disability ended on April 1, 2015. (AR 77–80.)

On May 18, 2018, Plaintiff filed a new and separate application for SSI in which he alleged disability beginning May 17, 2018. (AR 24.) He claimed he was unable to work "because of slow learner, can't function with others, asthma, back problems, and nose bleed [sic]." (AR 109.) The application was denied initially and upon reconsideration. (AR 108, 111.) Pursuant to his request for another hearing before an ALJ, Plaintiff appeared and testified before ALJ Andrews-Turner on October 31, 2019. (AR 39.) However, the ALJ issued another "unfavorable" decision on February 7, 2020. (AR 21.) The ALJ Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 12, 2021 (AR 10–13), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) on the bottom right corner of each page.

## II.    THE ALJ FINDINGS

The ALJ's unfavorable decision issued on February 7, 2020, included the following enumerated findings:

1.  The claimant has not engaged in substantial gainful activity since May 18, 2018, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: personality disorder and mild intellectual disability (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: can understand, remember and carry out simple instructions; can maintain concentration, pace and persistence for 2 hours at a time during an 8-hour workday for simple instructions; occasionally interact with the public, coworkers and supervisors; and can adapt to infrequent change in the workplace.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on June 25, 1986, and was 31 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has a high school diploma (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 18, 2018, the date the application was filed (20 CFR 416.920(g)).

(AR 26–34.)

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

**A.    Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the Commissioner's decision is supported by substantial evidence and (2) whether the proper legal criteria were applied to the Commissioner's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not

disabled. *Id.* Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on his residual functional capacity ("RFC"), he can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B.    The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first four steps – (1) he had not engaged in substantial gainful activity; (2) his impairments of personality disorder and mild intellectually disability were severe;[2]

---

[2] The ALJ found that Plaintiff's asthma and dyslipidemia were controlled with medication and, accordingly, were non-severe impairments. (AR 27.)

5

(3) he was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) he had no past relevant work – but determined at step five that Plaintiff could adjust to other work based on his RFC, age, education, and work experience. (AR 24–34.) Therefore, the ALJ concluded that Plaintiff has not been under a disability since May 18, 2018, when Plaintiff filed his application. (AR 34.)

### C.   Plaintiff's Assertions of Error

Plaintiff sets forth six assertions of error:

1. The Commissioner violated Plaintiff's constitutional rights by assigning the ALJ to Plaintiff's case;

2. The ALJ violated Plaintiff's constitutional rights "by relying upon her own prior decision, issued during a time when she had no authority to hear or decide his case";

3. The ALJ improperly found that that no new and material evidence existed in connection with the current case;

4. The ALJ improperly relied on an intelligence quotient ("IQ") score conducted before Plaintiff was 16 years old;

5. The ALJ improperly failed to consider Plaintiff's obesity; and

6. The ALJ and the judges on the Appeals Council "were not properly appointed."

(Docket No. 19 at 5.)

Plaintiff therefore requests that this case be remanded for further consideration under sentence four of 42 U.S.C. § 405(g), which states:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771

6

F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court now turns to Plaintiff's assertions of error.

### 1. The ALJ's Authority to Decide Plaintiff's Case

In his first, second, and sixth assertions of error, Plaintiff argues that the ALJ lacked authority to render a decision because the ALJ was not properly appointed under both the Federal Vacancies Reform Act, 5 U.S.C. § 3345 et seq. (1998) ("FVRA"), and the Constitution's Appointments Clause, U.S. Const. art. II, § 2, cl. 2. (Docket No. 19 at 6–10, 17–18.)

Plaintiff alleges that former SSA Acting Commissioner Nancy Berryhill was without power to appoint the ALJ that adjudicated Plaintiff's case in 2017 because Ms. Berryhill's tenure under the FVRA had expired when she ratified these appointments.[3] (*Id.* at 17–18.) Accordingly, Plaintiff contends that the ALJ had no constitutional basis to hear or render a decision on his disability status in 2017 because "any ALJ decision issued before July 16, 2018 had been reached through an unconstitutional process." (*Id.* at 9.) Plaintiff alleges that the ALJ's February 2020 decision improperly relied on the invalid 2017 decision. (*Id.*). Based on this series of events, Plaintiff urges the Court to remand the case to a "properly appointed" ALJ who would hear the case de novo. (*Id.* at 18.)

To support this argument, Plaintiff relies on *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), for the proposition that "decisions issued by government ALJs who were not properly appointed under

---

[3] Plaintiff makes the same contentions with respect to the Appeals Council.

the Appointments Clause at the time they heard a case must be reversed and remanded."[4] (*Id.* at 6.) Another court summed up this argument as follows:

> [T]he gist of [Plaintiff's] argument is this syllogism: (1) in light of *Lucia*, the SSA's ALJs were historically not appointed in conformity with the Constitution's Appointments Clause, (2) Berryhill had no authority to serve as the acting Commissioner when she ratified the allegedly unconstitutional appointments of the SSA's ALJs, and (3) therefore Berryhill had no authority to ratify any ALJ's unconstitutional appointment, including the ALJ who decided [Plaintiff's] case. And if the ALJ wasn't validly serving, then [Plaintiff's] case should return to the agency.

*Scott v. Comm'r of Soc. Sec.*, No. 4:22-cv-878, 2022 WL 18863813, at *16 (N.D. Ohio Dec. 14, 2022).

In response, Defendant argues that Ms. Berryhill was validly serving as the Acting Commissioner when she ratified and approved the ALJ's appointment. Accordingly, Defendant urges that the ALJ was properly appointed, the ALJ's decision in 2017 was validly made, and Plaintiff's Appointments Clause challenge must fail. (Docket No. 22 at 3–18.)

The FVRA provides the means for "temporarily authorizing an acting official to perform the functions and duties" of a vacant executive branch position requiring presidential appointment

---

[4] In *Lucia*, the United States Supreme Court held that the Security and Exchange Commission's ALJs were "inferior officers" rather than employees and were, therefore, not subject to the Appointments Clause. *Lucia v. S.E.C.*, 138 S.Ct. 2044, 2055 (2018). In response to this decision, the SSA and Ms. Berryhill "ratified the appointments of [the SSA's] ALJs and approved those appointments as [Ms. Berryhill's] own." *See* Social Security Ruling 19-1p; Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) On Cases Pending at the Appeals Council, 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019). However, Plaintiff argues that, in light of *Lucia*, the SSA's ALJs – who were historically treated as employees and not subject to the Appointments Clause – were not appointed in conformity with the Constitution's Appointments Clause. (Docket No. 19 at 6 (citing *Lucia*, 138 S.Ct. at 2044–67).) Accordingly, Plaintiff contends that the ALJ who decided his case in 2017 "was not appointed in a manner consistent with the United States Constitution at that time." *Id.*

and Senate confirmation. 5 U.S.C. § 3347. The FVRA imposes time limits on those "serving as an acting officer" and provides, in relevant part, as follows:

> (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office—
>
> > (1) for no longer than 210 days beginning on the date the vacancy occurs; or
> >
> > (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.
>
> (b) (1) If the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate, the person may continue to serve as the acting officer for no more than 210 days after the date of such rejection, withdrawal, or return.
>
> . . .

*Id.* § 3346.

At issue is whether, under the plain meaning of the statute, § 3446(a)(2) contains a "spring back" provision. If so, Ms. Berryhill was able to resume her role as Acting Commissioner on the date that the next nominee, Andrew Saul, was nominated. If not, Ms. Berryhill's ratification of the ALJ's appointment was ineffective because, under the FVRA, she was not properly acting as the Commissioner at that time. In *Silva v. Kijakazi*, the court provided a summary of Ms. Berryhill's designation and service as Acting Commissioner, as well as Mr. Saul's nomination:

> Ms. Berryhill was designated as Acting Commissioner on January 21, 2017 and served 210 days until November 16, 2017. *Williams v. Kijakazi*, No. 1:21-cv-141-GCM, 2022 WL 2163008, at * 2 (W.D. N.C. June 15, 2022). During these 210 days, President Trump did not nominate an SSA Commissioner. On March 6, 2018, Ms. Berryhill temporarily stepped down as Acting Commissioner. *See* Letter from Thomas H. Armstrong, U.S. Gov't Accountability Off. Gen. Couns., to Donald Trump, U.S. President (March 6, 2018), https://www.gao.gov/assets/b-329853.pdf (Reporting Ms. Berryhill's initial service as Acting Commissioner extended beyond the time allowed under the FVRA). On April 17, 2018, after President Trump nominated Andrew Saul as the Commissioner of Social Security, Ms. Berryhill resumed her role as Acting Commissioner pursuant to 5 U.S.C. § 3346(a)(2) until Mr. Saul was sworn in as Commissioner. *Id.* On July 16, 2018, Acting

9

> Commissioner Berryhill ratified the appointments of all SSA ALJs and approved them as her own. *Id.*

No. 2:21-cv-00301, 2022 WL 18144262, at *6 (S.D. Tex. Oct. 5, 2022), *report and recommendation adopted*, 2023 WL 123789 (S.D. Tex. Jan. 5, 2023).[5]

Plaintiff relies on the minority view, as set forth in two cases decided by the United States District Court for the District of Minnesota, to support his position that Ms. Berryhill had no legal authority under the FVRA as of November 16, 2017.[6] (Docket No. 19 at 18 (citing *Brian T.D. v. Kijakazi*, 580 F.Supp.3d 615 (D. Minn. 2022), *rev'd*, No. 22-1601, 2023 WL 2379383 (8th Cir. Mar. 7, 2023); *Richard J.M. v. Kijakazi*, No. 19-cv-827 (KMM), 2022 WL 959914 (D. Minn. Mar. 30, 2022), *appeal pending* No. 22-2127 (8th Cir. May 27, 2022)). Plaintiff "offers the exact same arguments here as the claimants in those cases [*Brian T.D.* and *Richard J.M.*]." (Docket No. 19 at

---

[5] Just like Plaintiff here, the plaintiff in *Silva* asserted that the FVRA limited Ms. Berryhill's authority to appoint ALJs and Appeals Council judges to only her first 210 days as Acting Commissioner, so her authority to appoint the ALJ in that matter allegedly ended before she made the appointment. No. 2:21-cv-00301, 2022 WL 18144262, at *6 (S.D. Tex. Oct. 5, 2022), *report and recommendation adopted*, 2023 WL 123789 (S.D. Tex. Jan. 5, 2023). The court disagreed and found that "Ms. Berryhill had the statutory authority to ratify all appointments in 2018 and Plaintiff's argument is without merit." *Id.* at *7.

[6] In his motion, memorandum in support of his motion, and reply, Plaintiff failed to acknowledge or discuss any authority that is adverse to his position regarding the constitutionality of the ALJ's decision or to the holdings in *Brian T.D.* and *Richard J.M.* (*See* Docket Nos. 18, 19, 24.) He also failed to acknowledge that these opinions were being appealed. Further, in its response, Defendant pointed to many cases in contravention to Plaintiff's position, but Plaintiff did not consider or address these opinions in his reply. (Docket No. 22 at 7 n.5.) Although Plaintiff may not be under an explicit duty to disclose such adverse legal authority to this Court because none is binding on this jurisdiction (*see* ABA MODEL RULES OF PROF'L CONDUCT R. 3.3(A)(2) (AM. BAR ASS'N 2020)), Plaintiff's failure to address the merits of countervailing caselaw makes his argument that much less persuasive. *See also* Local Rule 83.01(c)(6) (making clear that Tennessee Rules of Professional Conduct govern the conduct of members of the bar of this Court) and Tenn. R.P.C. 3.3(a)(2) ("A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.")

18.) In *Brian T.D.*, the court rejected the notion of a spring-back in the FVRA. 580 F.Supp.3d at 634–35. The court concluded that because Mr. Saul was nominated after the 210-day period ended, Ms. Berryhill was not "presently serving" and could not "spring back" and serve as the Acting Commissioner while Mr. Saul's nomination was pending. *Id.* at 630. The *Brian T.D.* court held that the ALJ had not been properly appointed and therefore lacked the authority to hear and decide the plaintiff's case, so the decision was vacated and remanded to the SSA for a new hearing. *Id.* at 635.

However, the United States Court of Appeals for the Eighth Circuit recently reversed and remanded the *Brian T.D.* court's decision. *Dahle v. Kijakazi*, No. 22-1601, 2023 WL 2379383, at *4 (8th Cir. Mar. 7, 2023) ("Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs. Therefore, we reverse the grant of summary judgment and remand for further proceedings on the merits.").[7] The Eighth Circuit sided with the vast majority of courts in other circuits that have found that § 3346(a) does contain a "spring back" provision, which enabled Ms. Berryhill to resume her role as Acting Commissioner as of the date Mr. Saul was nominated. *Id.* at *3 ("This is what other courts to address the issue have decided.") (citing *Snyder v. Kijakazi*, No. 1:21-CV-00103-LRR, 2022 WL 4464847 *18-21 (N.D. Iowa, Sept. 26, 2022)).[8]

---

[7] This decision was published after Plaintiff filed his motion, memorandum in support, and reply. However, Plaintiff made no effort to supplement his filings.

[8] *See also Hernandez v. Kijakazi*, No. 22-01556(FLW), 2022 WL 17751355, at *12 n.6 (D.N.J. Dec. 19, 2022) (citing collection of cases); *Scott v. Comm'r of Soc. Sec.*, No. 4:22-cv-878, 2022 WL 18863813, at *16 (N.D. Ohio Dec. 14, 2022); *Mia S. v. Kijakazi*, No. 8:21-CV-439, 2022 WL 3577023, at *13–14 (D. Neb. Aug. 19, 2022); *Brooks v. Kijakazi*, No. 1:21CV609, 2022 WL 2834345, at *16 (M.D.N.C. Jul. 20, 2022); *Bauer v. Kijakazi*, No. 21-CV-2008-KEM, 2022 WL 2918917, at *1–17 (N.D. Iowa Jun. 25, 2022) (providing a lengthy and thorough analysis of the

11

This Court finds the thorough analysis conducted by the court in *Brooks* to be particularly persuasive.[9] 2022 WL 2834345 at *16. In *Brooks*, the court provided a helpful overview of the FVRA, including the "spring back" language at issue; laid out and analyzed pertinent background facts, including the timing of appointments and the issuance of relevant government memoranda and notices; gave an overview of the *Lucia* decision and its impact on the SSA's appointment of ALJs; and detailed the *Brian T.D.* court's analysis. *Id.* at *14–16. The *Brooks* court then thoughtfully analyzed the language in § 3346(a) of the FVRA by "begin[ning] with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose[.]" *Id.* at * 16 (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)). To help it conduct its own statutory analysis of § 3346(a), the court looked to Congressional Senate Reports on the FVRA, Department of Justice guidance on the FVRA, and opinions from other courts to determine that the *Brian T.D.* court's reasoning fell short. *Id.* at *16–23. Ultimately, the court in *Brooks* found:

> In sum, the plain language of Section 3346(a) of the FVRA makes clear that Section 3346(a)(2) provided authority for Berryhill to resume service as Acting Commissioner as of the date of President Trump's nomination of Saul for Commissioner on April 17, 2018. Further, the FVRA's legislative history, caselaw interpreting Section 3346(a)(2), and interpretations of that Section from the DOJ and the GAO all support the interpretation of Section 3346(a)(2) as a spring-back provision. As such, the Court should find that Berryhill lawfully ratified the SSA's ALJs' appointments as her own on July 16, 2018, and thus that Plaintiff's third issue on review fails as a matter of law.

---

FVRA and the *Brian T.D.* court's reasoning); *Williams v. Kijakazi*, No. 1:21-CV-141-GCM, 2022 WL 2163008, at *3 (W.D.N.C. June 15, 2022).

[9] It appears that the United States District Court for the Northern District of Ohio is the only district court in the Sixth Circuit that has analyzed whether Ms. Berryhill was authorized to serve as the Acting Commissioner and whether the SSA's ALJs were validly appointed. *Scott*, 2022 WL 18863813. The *Scott* court sided with the majority after conducting an analysis that this Court finds to be thorough, well-reasoned, and persuasive.

*Id.* at *23. Accordingly, just as the *Brooks* court and most other courts have found, this Court concludes that, based on the plain language of the FVRA, Ms. Berryhill was properly serving as Acting Commissioner of the SSA and, therefore, had the authority to nominate the ALJ that oversaw Plaintiff's case in 2017.[10] Plaintiff's argument that the ALJ had no authority to hear Plaintiff's subsequent and separate case in 2019 and render a decision in February 2020 is without merit. For these reasons, this Court rejects Plaintiff's first, second, and sixth assertions of error.

### 2.    The ALJ's Finding of No New and Material Evidence

In its third assertion of error, Plaintiff alleges that even if the ALJ was authorized to hear his case, the ALJ erred in her adoption of a prior decision made on August 11, 2017 because there was "new and material evidence" that the ALJ either did consider or should have considered. (Docket No. 19 at 10-14.) Therefore, according to Plaintiff, the ALJ was not bound to adopt the 2017 decision and should not have done so, and the case should, therefore, be remanded. (*Id.* at 14.)

In making this argument, Plaintiff relies on an exception within Social Security Acquiescence Ruling 98-4(6), which states that the SSA must adopt a prior finding as to a prior disability claim when the SSA is deciding a subsequent disability claim with an unadjudicated period "*unless* there is new and material evidence relating to such a finding." SSAR 98-4(6), 63 Fed. Reg. 29771 (Jun. 1, 1998) (emphasis added). This ruling was implemented in the wake of the Sixth Circuit's decision in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), and

---

[10] In its response, Defendant argues that, if the ALJ's ratification was invalid, remand would nevertheless be unwarranted based on the "rule of necessity" and "de facto officer doctrine." (Docket No. 22 at 14.) Plaintiff made arguments to the contrary in its reply. (Docket No. 24 at 10–11.) The Court does not address these arguments because it has found that the ALJ's ratification was valid.

represented the prevailing interpretation of *Drummond* for many years. *See Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 362 (6th Cir. 2004) ("In *Drummond*, this court held that, absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."); *Ford v. Berryhill*, No. 5:16-CV-00115-LLK, 2017 WL 2531588, at *1 (W.D. Ky. June 9, 2017) ("Read together, *Drummond* and Acquiescence Ruling 98-4(6) establish that an ALJ is bound by the prior ALJ's RFC finding unless there is new and material evidence of a change (improvement) in the claimant's medical condition or a relevant change in the law.").

However, in 2018, the Sixth Circuit issued a decision in *Earley v. Comm'r of Soc. Sec.* that rectified what it perceived to be an inappropriate flattening of the *Drummond* holding:

> Unusual facts, it seems to us, led to some overstatement in *Drummond* but not to an incorrect outcome. *Drummond* correctly held that substantial evidence did not support the ALJ's decision. And *Drummond* correctly held that res judicata may apply to administrative proceedings. . . . If an individual, say, files a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application. And res judicata would apply in both directions: to bar the government and individuals from relitigating a past final decision for no reason other than to take a second bite at the same apple.

893 F.3d 929, 933 (6th Cir. 2018) (internal citations omitted). The Sixth Circuit clarified that any application submitted by the same claimant for a new alleged period of disability would warrant "fresh review" of the administrative record to determine whether the claimant's condition had worsened or otherwise justified a change in the analysis from the previous administrative opinion. *Id.* at 934. Nevertheless, the Sixth Circuit cautioned that a claimant filing a second application:

> should not have high expectations about success if the second filing mimics the first one and the individual has not reached any new age (or other) threshold to obtain benefits. What's past likely will be precedent in that setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals.

*Id.* at 933.

14

In this case, the ALJ acknowledged her 2017 decision and stated that the evidence before her in 2020 "did not include new and material evidence regarding the severity of the claimant's limitations or his [RFC]." (AR 24.) Accordingly, she stated that she was bound by the 2017 decision's findings regarding Plaintiff's limitations and RFC. However, she wrote that she was not bound by the 2017 decision's finding regarding Plaintiff's ability to do other work because a vocational expert testified at the most recent hearing and provided new and material evidence. (*Id.*) She also wrote that she considered the "entire record" and "fully considered the medical opinions and prior administrative medical findings" "[s]ince the current application finding date." (AR 29–30.) The ALJ did not reference *Drummond*, *Earley*, or Acquiescence Ruling 98-4(6).

Plaintiff asserts that the ALJ's statement was made in error because the record before her included "new and material evidence" related to Plaintiff's mental impairments and physical impairments. (Docket No. 19 at 11.) He believes the ALJ was required to consider this "new and material evidence" rather than rely on the prior 2017 decision. (*Id.* at 12.) Plaintiff finds fault in what he perceives as the ALJ's failure to "clearly articulate the basis for her decision" and her reliance on "boilerplate findings." (*Id.* at 13.) To support his argument, Plaintiff points to *Drummond* and Acquiescence Ruling 98-4(6), but he fails to discuss how his position falls in line with *Earley*, which is current and controlling Sixth Circuit law.[11]

With respect to Plaintiff's mental impairments, the new evidence to which Plaintiff points includes a May 2019 independent psychological assessment conducted by Wyatt E. Harper, III,

---

[11] Instead of citing controlling Sixth Circuit case law, Plaintiff points to case law from other circuits that has much less bearing on the issues at hand. *See* Docket No. 29 at 14 (citing *Bjornson v. Apfel*, 671 F.3d 640 (7th Cir. 2012); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112 (3d Cir. 2000)).

M.A.[12] (Docket No. 19 at 11 (citing AR 354–59).) Mr. Harper assessed Plaintiff as having an IQ score of 57 and concluded that Plaintiff's abilities to concentrate and exert mental control were "extremely low." (*Id.*) Plaintiff also highlights new evidence within the two Disability Determination Explanations sent to Plaintiff when his claim was denied at the initial level on September 14, 2018 (AR 92–107) and upon reconsideration on December 11, 2018 (AR 114–29). (Docket No. 19 at 12.) This "new evidence" also includes RFC assessments undertaken by state agency psychologists in August 2018 (AR 103–05) and December 2018 (AR 124–27). (Docket No. 19 at 12–13.)

With respect to the Plaintiff's physical impairments, Plaintiff points to new evidence in the September 2018 initial Disability Determination Explanation. (Docket No. 19 at 12.) In particular, he points to a chart wherein the impairment "obesity" is listed as "severe" (AR 98) and to the RFC assessment where his environmental limitations are rated (AR 102) ("Fumes, odors, dusts, gases, poor ventilation, etc.: Avoid concentrated exposure").

This Court agrees with Plaintiff that the ALJ erred when she stated that she was bound by the 2017 decision. The time period covered by Plaintiff's second disability claim (May 17, 2018 to present) is different than the time period covered by his first disability claim (April 1, 2015 to August 11, 2017). Accordingly, res judicata does not apply and the ALJ was not bound by the 2017 decision. *See Ratliff v. Saul*, No. 7:18-CV-114-HRW, 2020 WL 855958, at *3 (E.D. Ky. Feb. 20, 2020).

Nevertheless, despite the ALJ's misstatement that she was bound by the 2017 decision, remand is not warranted because an examination of the decision shows that the ALJ did not, in

---

[12] Plaintiff's fourth assertion of error also relates to this May 2019 assessment, which is discussed in more detail in a later section of this report and recommendation.

fact, bind herself by the 2017 decision. Rather than rotely adopt the 2017 decision, the ALJ gave the evidence in the record a "fresh" look in compliance with *Earley*. 893 F.3d at 934. However, as the *Earley* court was careful to state, "[f]resh review is not blind review." *Id.* ("[Plaintiffs] should not have high expectations about success if the second filing mimics the first one and the individual has not reached any new age (or other) threshold to obtain benefits"). *See also Burrage v. Saul*, No. 2:18-cv-00079, 2019 WL 3780095, at * 5 (M.D. Tenn. Aug. 12, 2019); *Lambert v. Comm'r of Soc. Sec.*, No. 1:18-CV-116, 2019 WL 336903 (S.D. Ohio Jan. 28, 2019) ("Because [the ALJ] gave a 'fresh look' to the new evidence, a remand under *Earley* is not warranted.").

Although the ALJ did not specifically reference all the records that Plaintiff points to in his memorandum, an ALJ's failure to discuss certain records does not mean that the ALJ did not consider those records. *See Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").

Further, the ALJ did examine certain new treatment records that were made during the time period covered by the claim at issue (i.e., May 17, 2018 to present).[13] Importantly, the ALJ examined new records to support her finding that Plaintiff "has the residual functional capacity to

---

[13] For example, the ALJ relied upon a May 22, 2019 treatment record from Covenant Medical Group (AR 364–66 ("B9F")) to support her finding that Plaintiff's asthma and dyslipidemia are controlled by medication and are not, therefore, severe impairments. (AR 27.) Plaintiff does not challenge the ALJ's finding that his asthma and dyslipidemia are non-severe impairments.

perform a full range of work at all exertional levels" but with certain "non-exertional limitations." (AR 29–32.) The current RFC mirrors the prior RFC from the 2017 decision, except that it adds one additional non-exertional limitation: Plaintiff "can maintain concentration, pace and persistence for 2 hours at a time during an 8-hour workday for simple instructions." (AR 29.) Those new records included state agency psychological evaluations taken on August 22, 2018 (AR 92–107 ("B2A")) and December 11, 2018 (AR 114–29 ("B7A")), which showed that Plaintiff "has moderate limitations in the areas of understanding/remembering, concentration/pace, social interaction, and adapting/managing self." (AR 32.) The ALJ stated that this finding was supported by both old and new treatment records, including records from Covenant Medical Group on May 17, 2018 (AR 336–37 ("B6F")), February 20, 2019 (AR 349–53 ("B7F")), and July 25, 2019 (AR 360–73 ("B9F")). (AR 32.) In particular, the ALJ stated that these records showed that Plaintiff had "consistently normal" mental examinations. (*Id.*)

In addition, the ALJ conducted an extensive evaluation of Mr. Harper's May 2019 assessment. (AR 30–32.) Plaintiff argues that the May 2019 assessment is "new" and "material," so the ALJ's statement that there was no "new and material evidence" was "contrary to fact," which requires a remand of the proceedings. (Docket No. 19 at 14.) In other words, Plaintiff believes that the mere existence of the 2019 assessment is enough to warrant remand because it proves that the ALJ's statement contains an error. That argument, however, is one of form over substance. Plaintiff points to no case law to support his contention that an ALJ's misstatement merits remand even when the substance of the decision contradicts that misstatement.

As detailed above, the ALJ undertook a "fresh" but not "blind" review of the evidence. *Earley*, 893 F.3d at 934. Although Plaintiff may differ with the ALJ on her evaluation of the 2019 assessment and while the assessment may contradict some of the evidence in the record, this

Court's role is not to inquire "if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). *See also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (noting that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support the opposite conclusion").

In short, although the ALJ erred when she stated that she was bound by the 2017 decision, this statement alone is not enough to warrant remand because the ALJ complied with *Earley* and provided a "fresh review" of the evidence. For these reasons, the Court rejects Plaintiff's third assertion of error.

### 3. The ALJ's Consideration of Plaintiff's Prior IQ Score

Plaintiff contends that this case should be remanded because the ALJ improperly evaluated Mr. Harper's May 2019 psychological assessment. (Docket No. 19 at 14–15.) Plaintiff believes that that the ALJ erred when she considered Plaintiff's prior high school IQ score and compared it to the IQ score and other information contained within the 2019 assessment. (*Id.*) In support of this argument, Plaintiff points to certain Social Security regulations that provide restrictions on the use of childhood IQ scores when making disability determinations. (*Id.* at 15.) Plaintiff's arguments are not persuasive.

In May 2019, Plaintiff underwent an examination with Mr. Harper, a licensed psychological examiner and Health Service Psychologist. (AR 354–59.) The examination consisted of a diagnostic interview and mental status exam, interview of Plaintiff's caregiver, memory test, and intelligence test. (AR 356.) Mr. Harper concluded that Plaintiff demonstrated a Full-Scale IQ score of 57 and a Global Assessment of Functioning ("GAF") score of 47. (AR 358–

59.) Plaintiff's prior IQ scores from 2014 and 2016 were similarly low, but the examiners for those tests noted that the scores were invalid because Plaintiff did not give his best effort. (*See, e.g.*, AR 82, 328–29.) However, an earlier IQ score from 2001 when Plaintiff was in high school was much higher with a score of 69. (AR 276.)

In her decision, the ALJ found that the May 2019 assessment was "less than persuasive" and that the GAF score in particular should be "given no special significance or consideration." (AR 354–59.) In support of this conclusion, the ALJ reviewed the May 2019 assessment records (AR 354–59 ("B8F")); other medical records indicating that plaintiff could care for his own personal needs without issue (AR 207–14 ("B3E")); Plaintiff's education and medical records containing IQ scores from testing via the Weschler Intelligence Scale for Children (AR 271–91 ("B11E"), 325–33 ("B5F")); and Plaintiff's education records indicating his performance in classes and on standardized tests (AR 242–68 ("B9E"), 271–91 ("B11E").)

It is the ALJ's consideration of prior IQ testing with which Plaintiff takes sole issue. He argues that IQ tests performed before the age of 16 should only be considered for two years. (Docket No. 19 at 15.) Accordingly, Plaintiff believes that the ALJ's consideration of his IQ score from age 15 is enough to necessitate remand of the ALJ's decision. (*Id.*) To support his position, Plaintiff points to regulations and guidance that he believes set parameters around the ALJ's ability to consider IQ scores. (Docket No. 19 at 15.) In particular, he references a portion of subsection 112.00 of the Listing of Impairments, which focuses on mental disorders for persons under age 18, and a section within the SSA's Program Operations Manual Systems (POMS) related to intelligence tests.[14] (*Id.*). However, these documents are to be considered during step three of the

---

[14] The POMS is "a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims." *Davis v. Sec'y of Health &*

five-step process when determining whether the claimant is presumed disabled. Here, the ALJ had already determined in step three that Plaintiff was not presumed disabled under subsections 12.05 or 12.08 in the Listing of Impairments. She did not consider Plaintiff's IQ at any age when making that determination.[15] (AR 27–29.) Rather, she considered Plaintiff's IQ scores at the next step when determining his RFC. Plaintiff does not point to any law or regulation that prohibits such a consideration.[16]

Even if it was improper for the ALJ to consider Plaintiff's childhood IQ score when assessing his RFC, the ALJ's findings with respect to Plaintiff's RFC were nevertheless supported by substantial evidence. The ALJ considered many other pieces of evidence in the record – including Plaintiff's symptoms, the consistency of those symptoms with his medical evaluations, medical opinions, and prior administrative findings – when she determined that he could perform a full range of work at all exertional levels but with some non-exertional limitations. (AR 29.) She only considered the high school IQ score when assessing the May 2019 assessment, which she

---

*Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989). While the POMS "does not have the force and effect of law, it is nevertheless persuasive." *Id.*

[15] In her step three analysis, the ALJ focused on Plaintiff's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. (AR 27–29.) She determined that Plaintiff did not have an extreme or marked limitation in any of those criteria, and therefore did not meet the requirements of subsections 12.05 or 12.08. (*Id.*)

[16] Plaintiff asserts that § 112.00(D)(10) in the Listing of Impairments states that IQ scores must be "sufficiently current for accurate assessment," among other requirements. (Docket No. 19 at 15) However, the Listing of Impairments that was in effect at the time the ALJ made her decision did not include the quoted language. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 § 112.00(D) (effective Mar. 27, 2017 to Apr. 1, 2021). Instead, the quoted language is from an earlier version of the Listing of Impairments. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 § 112.00 (effective Sept. 29, 2016 to Jan. 16, 2017). Accordingly, the ALJ was under no obligation to consider whether Plaintiff's IQ score was sufficiently current.

found not to be persuasive. However, the May 2019 assessment was not the only medical evidence

on which the ALJ made her decision regarding Plaintiff's RFC. The ALJ relied on Plaintiff's daily

activities, recent medical records, prior educational records, and more when she determined that

Plaintiff was not precluded from all work as he alleged:

> The medical evidence demonstrated that his mental health and associated functional limitations had not worsened since his prior unfavorable decision dated August 11, 2017 (B1A). The claimant goes to church weekly, visits with friends monthly, can do some household chores, and can care for his own personal needs without assistance. Throughout his treatment visits with CMG from April 2017 to July 2019, his mental examinations were consistently normal (B6F/B7F/B9F). CMG treatment notes indicated he had improved depressive/ anxiety symptoms while on Zoloft and the evidence noted that the claimant even had been taken off medication for several months because he displayed no symptoms of depression or anxiety (B6F). Treatment records have shown that the claimant is able to interact with others (B8F/B9F/B10F). However, the claimant's high school records noted that the claimant has had behavior issues in the past, but it was noted to be adequate (p5,B11E).
>
> Accordingly, the medical evidence failed to show symptoms of the frequency and/ or severity to preclude all work as the claimant has alleged. In fact, the claimant testified that he has never tried to work in his adult life. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 32.) The ALJ's determination was supported by "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Accordingly, the

Court rejects this assertion of error.

**4.     The ALJ's Evaluation of Obesity**

Plaintiff argues that his case should be reversed or remanded because the ALJ failed to

mention, let alone adequately evaluate, his obesity and its exacerbating effects on his other

impairments. (Docket No. 19 at 16–17.) Plaintiff contends that the ALJ ignored Social Security

Ruling 19-2p altogether and that her silence on this matter necessitates remand for further proceedings.

SSR 19-2p provides guidance on how the SSA establishes that a person has a medically determinable impairment of obesity and evaluates obesity in disability claims. SSR 19-2p, 84 Fed. Reg. 22924, 22924 (May 20, 2019). It provides that "[t]he combined effects of obesity with other impairment(s) may be greater than the effects of each of the impairments considered separately," and that the RFC should account for "the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at 22925. *See Miller v. Comm'r*, 811 F.3d 825, 835 (6th Cir. 2016) (noting SSR 19-2p's predecessor "directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation") (citations omitted). An ALJ must "consider the limiting effects of obesity when assessing a person's RFC" and "explain how [they] reached [their] conclusion on whether obesity causes any limitations." 84 Fed. Reg. at 22925.

Here, the ALJ did not explicitly mention or reference Plaintiff's obesity in her findings, though the record itself is replete with references to Plaintiff's weight and BMI. The ALJ referenced certain portions of the record in which Plaintiff's weight is mentioned but did not explicitly state that she considered obesity when assessing Plaintiff's RFC. For example, the ALJ referenced office treatment records from Covenant Medical Group that spanned from April 2017 to May 2018 that reference Plaintiff's weight (AR 334–48 ("B6F"). (AR 30).[17] She also asked Plaintiff for his weight and height during the administrative hearing (AR 64.)

_____

[17] Plaintiff's weight and body mass index (BMI) are mentioned several times – for example, "Wt 207, BMI 35.53" on April 12, 2017 (AR 342), "Wt 200.6, BMI 34.43" on May 17, 2017 (AR 341), "Wt 202.4, BMI 34.74" on June 23, 2017 (AR 339). Those records also contain a portal message sent to Plaintiff on August 24, 2017 stating the "need to reduce consumption of fatty/fried

23

However, Plaintiff bears the "burden of showing specifically how his obesity, in combination with other impairments, limited his ability to a degree inconsistent with the ALJ's RFC determination." *Wagner v. Comm'r of Soc. Sec.*, No. 1:15-CV-0558, 2016 WL 2585797 at *6 (W.D. Mich. May 5, 2015) (analyzing SSR 19-2p's predecessor). *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments . . . ."). Thus, even if an ALJ errs by not explicitly discussing obesity, remand will not be warranted if a plaintiff fails to meet his burden to produce sufficient evidence to demonstrate the existence of a disability due to his obesity, either when considered by itself or in combination with his other impairments. *Wagner*, 2016 WL 2585797 at *6.

Although Plaintiff has provided some evidence that he is or was obese, he has failed to demonstrate how his obesity – either on its own or considered in combination with his impairments of personality disorder and/or mild intellectual disability – has rendered him disabled. He has not directed the Court to any medical evidence indicating that his obesity impacted his ability to perform work or other tasks. He provides his body mass index (BMI) calculations on various dates and points to a state agency physician's inclusion of obesity as a severe impairment, but otherwise does not explain how the ALJ's determination that he "has the [RFC] to perform a full range of work at all exertional levels but with . . . non-exertional limitations" is inconsistent with his obesity. (AR 29; Docket No. 19 at 16 (citing AR 98, 102, 201, 341).) He does not, for instance, point to a particular medical record wherein a provider has opined on how his obesity makes it more difficult for him to walk or stand or to lift or carry objects. Despite relying on one state agency physician's

---

foods and processed sugars while incorporating an exercise regimen to help lose weight." (AR 338.)

finding at the initial level, he fails to mention or address a subsequent state agency physician's finding at the reconsideration level that his obesity was "non severe" and would "result in no work limitations." (AR 120–21.)

In sum, nothing in the records shows that Plaintiff's weight influenced his ability to function. Accordingly, any failure by the ALJ to address Plaintiff's obesity was harmless error. *See Long v. Comm'r of Soc. Sec.*, No. 2:18-cv-00597, 2019 WL 3406431, at *11–12 (S.D. Ohio Jul. 29, 2019) (citing *Callicoatt v. Astrue*, 296 F. App'x 700, 702 (10th Cir. 2008) (finding that even if reference to weight in the medical record created an affirmative duty to consider obesity, failure to do so was harmless error when the claimant provided "no evidence . . . showing that her obesity exacerbated her other impairments"); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (holding that although references to weight should likely have alerted the ALJ to the claimant's obesity, an ALJ's failure to explicitly consider obesity was harmless when the claimant failed to "specify how his obesity further impaired his ability to work"); *Griffin v. Comm'r of Soc. Sec.*, No. 1:13-cv-594, 2014 WL 2442109 at *3 (S.D. Ohio May 30, 2014) (finding no reversible error in not explicitly considering obesity's combined effect where plaintiff did not provide evidence that obesity affected her ability to work)). For these reasons, the Court rejects this assertion of error.

## V.    RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 18) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge

26